IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RONNIE M. MULLINS,

        Plaintiff,

v.                                          CIVIL ACTION NO. 2:04-01095

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

This action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, who has submitted her proposed findings of fact and recommendation pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge's Findings and Recommendation were filed on July 19, 2005. On July 27, 2005, Defendant timely filed her objections to the Findings and Recommendation.

The Court has reviewed *de novo* those portions of Magistrate Judge Stanley's Findings and Recommendation to which Defendant objects. For the reasons set forth below, the Court **DENIES** Defendants's objections, and **ACCEPTS** and **INCORPORATES** the Findings and Recommendation of the Magistrate Judge, which **GRANTS** Plaintiff's Motion for Judgment on the Pleadings to the extent he seeks remand and otherwise **DENIES** Plaintiff's Motion; **DENIES** Defendant's Motion for Judgment on the Pleadings, **REVERSES** the final decision of the Commissioner, and **REMANDS** this case to the Commissioner for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

In her motion, Defendant asserts the Magistrate Judge erred in recommending that the final decision of the Commissioner be reversed and the case be remanded for further proceedings. Specifically, Defendant claims the decision by the Administrative Law Judge's ("ALJ") that Plaintiff retained the ability to perform occasional fine manipulation is supported by substantial evidence. Therefore, Defendant asserts that remand for further proceedings is unwarranted.

The medical evidence in this case reveals that Plaintiff suffers from multiple sclerosis. At a hearing held on December 4, 2003, Plaintiff testified that his hands constantly tingle and then go numb. *Tr.* at 7 (R. 222). He also said he has lost feeling in his hands and is unable to button his shirts. *Id.* at 7, 9 (R. 222, 224). He said he is able to shave if he puts his razor in one hand and locks it, but while shaving, he must take two or three breaks to sit down. *Id.* at 9 (R. 224). With respect to gross manipulation, Plaintiff stated that if he can see something like a cup he can usually grab it. *Id.* at 10 (R. 225).

Plaintiff's wife also testified at the hearing and said that, while she must button Plaintiff's shirts, he can perform most of his personal hygiene needs. *Id.* at 24 (R. 239). Her testimony also was consistent with Plaintiff's testimony, in that he must take breaks and sit down when he shaves. *Id.* at 24 (R. 239). In addition, she said that his hands are very shaky when he picks up a glass to drink and that she does not allow him to do dishes because she is afraid he will drop them and get cut. *Id.* at 20-21 (R. 235-36). She further said that when Plaintiff attempts to sign his

name it is illegible, and he no longer uses a computer because he misses the keys when he tries to type. *Id*. at 20, 22 (R. 235, 237).

Also at the hearing was a vocational expert, Olen Dodd. Mr. Dodd testified that a hypothetical person in Plaintiff's situation would be unable to return to his previous employment, but, without considering any limitation on his fine manipulation ability, would be able to perform a variety of unskilled jobs, such as a telephone quotation clerk, a non-emergency dispatcher, and an information clerk. *Id*. at 27-28 (R. 242-43). However, if a person in Plaintiff's situation was unable to do fine manipulations, Mr. Dodd stated that the jobs he mentioned would not be available because they require "at least occasional manipulation ability[.]" *Id*. at 28 (R. 243). Focusing on Plaintiff's response to the ALJ's question regarding gross manipulation, the ALJ asked Mr. Dodd how the availability of jobs would be impacted if an individual had occasional manipulation ability because such individual can do tasks that they can see. *Id*. at 30-31 (R. 245-46). In response, Mr. Dodd said that such a person would be able to perform a job such as a telephone quotation clerk because the person would be able to see the buttons on a phone or computer keyboard and be able to manipulate them. *Id*. at 31 (R. 246).

In finding Plaintiff not disabled, the ALJ mentioned three reports from Plaintiff's treating physician, Naveed Ahmed, M.D. In the first report, dated January 23, 2003, Dr. Ahmed found that Plaintiff's multiple sclerosis was stable with no flare-ups and that his tone, bulk, strength, coordination, and gait were normal. (R. 162-64). In the second report, dated March 13, 2003, Dr. Ahmed again found Plaintiff had normal tone, bulk, strength, coordination, and gait, but found that

3

his gait was getting worse. Dr. Ahmed wrote that Plaintiff told him that he was doing significantly better but he had problems with walking and tends to stumble. (R. 159-61). In the third report, dated April 24, 2003, Dr. Ahmed stated, in part, that Plaintiff's multiple sclerosis seemed to be in remission, but he had a mild gait disturbance. (R. 156-58). Thereafter, on July 10, 2003, A. Rafael Gomez, M.D., a state agency physician, reviewed the record, and found no manipulative limitations. *Physical Residual Functional Capacity Assessment*, at 4 (R. 172). However, the ALJ also mentioned in his decision the "Medical Assessment of Ability to do Work-Related Activities (Physical)" form completed by Dr. Ahmed on January 6, 2004. (R. 194-97). On that form, Dr. Ahmed noted that Plaintiff has multiple sclerosis which worsens with fine motor activities, in particular his impairment involves reaching and handling. (R. 196). This finding supports Plaintiff's testimony of December 3, 2003. In fact, the ALJ stated in his decision that the testimony of Plaintiff was "generally credible." (R. 18). Nevertheless, the ALJ determined that Plaintiff can occasionally perform fine manipulation activities and, thus, is not disabled because he can perform the types of sedentary work identified by the vocational expert, that is, a telephone clerk, a non-emergency dispatcher, or an information clerk. (R. 18-19).

In the Findings and Recommendation, the Magistrate Judge recommends that the decision of the Commissioner be reversed because the ALJ's decision that Plaintiff could perform occasional fine manipulations is not supported by substantial evidence. In particular, the Magistrate Judge points out that the ALJ found Plaintiff's testimony "generally credible," yet does not explain why he apparently rejected the testimony that he cannot button his shirts, write, or type. Although Plaintiff admitted he could reach out and grab a cup if he saw it and was able to shave, his and his

4

wife's testimony specifically differentiated between that type of activity and the ability to do fine motor skills such as buttoning a shirt, writing, and typing. Nevertheless, the revised hypothetical was premised on a theory that if an individual could see something they could do the action required. Thus, the vocational expert testified that such individual could work as a telephone quotation clerk because such individual would be able to see the buttons on a phone and computer and be able to manipulate them. Clearly, this premise is contrary to the testimony of Plaintiff and his wife. Given that Plaintiff's claim turns on the issue of fine manipulation, the Court agrees with the Magistrate Judge that the ALJ should be required to explain why Plaintiff's testimony was rejected. *See Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (holding that an ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge"). As no explanation is given, the Court cannot find that the ALJ's decision is supported by substantial evidence.

Moreover, as noted by the Magistrate Judge, although the ALJ said he afforded significant weight to the opinion of Dr. Ahmed, Dr. Ahmed's most recent assessment of Plaintiff included a finding that Plaintiff's multiple sclerosis got worse with fine motor activities, in particular in the areas of reaching and handling. This finding is consistent with Plaintiff's testimony. Again, given this consistency, it is even more evident why an explanation regarding the finding that Plaintiff can perform occasional fine motor activities is necessary. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2004) (stating the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

5

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants's objections, and **ACCEPTS** and **INCORPORATES** the Findings and Recommendation of the Magistrate Judge, which **GRANTS** Plaintiff's Motion for Judgment on the Pleadings to the extent he seeks remand and otherwise **DENIES** Plaintiff's Motion; **DENIES** Defendant's Motion for Judgment on the Pleadings, **REVERSES** the final decision of the Commissioner, and **REMANDS** this case to the Commissioner for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

The Court **DIRECTS** the Clerk to send a certified copy of this written Opinion and Order to Magistrate Judge Stanley, counsel of record, and any unrepresented parties.

DATE: August 25, 2005

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE